# SMITH WHITENACK v. STATE.

No. A-6952.  Opinion Filed Jan. 17, 1930.
Rehearing Denied March 8, 1930.
(285 Pac. 990.)

Meacham & Meacham, Sylvester Grim, Darnell & La Rue, and Ben F. Williams, for plaintiff in error.

J. Berry King, Atty. Gen., and J. H. Lawson, Asst. Atty. Gen., for the State.

CHAPPELL, J.  The plaintiff in error, hereinafter called defendant, was convicted in the district court of Custer county on a charge of manslaughter and his punishment fixed at fifteen years in the state penitentiary.

Defendant was charged with the murder of one Harrison Hicks, which was alleged to have occurred on the 29th day of July, 1927. This killing occurred in Barton's Store in the town of Butler. The defendant and deceased apparently had been friends for almost twenty years. Their friendship appears to have been broken by the defendant requesting the deceased not to sell whisky to one of Harding's negro laborers and the difficulty was renewed during the month of February, 1927, by defendant's request to the deceased not to sell any more whisky to defendant's son. There is some evidence in the record indicating that the defendant and deceased were each engaged in the unlawful sale of intoxicating liquor, and that, prior to the killing, the defendant had accused the deceased of stealing some 200 to 400 gallons of liquor from him. The evidence of the state tends to show that at about noon on the day of the killing the defendant went into the Barton Store, that the deceased was in the store, and that, shortly after defendant entered the store, the killing occurred. There were five wounds in the body of the deceased. The testimony of the witnesses was that four shots were fired. The evidence of the physician who made the post mortem of the body was that one bullet had gone in at the back of deceased and came out the front, and that one of the bullets had cut the arm of the deceased, but was not in the body, and that the remaining bullets were in the body of deceased when the examination was made. After the killing and before the body was removed from Barton's Store, a coroner's jury was called, and the sheriff and county attorney made a search of the store to find all possible evidence concerning the killing.

Defendant attempted to show that, when he went into the Barton Store, Hicks immediately fired a shot at him and shot at him at least twice, and that he shot Hicks

in his own self-defense. The questions of fact involved in the case were entirely for the jury. After hearing all the evidence in the case and the law as given by the court, the jury found the defendant guilty of manslaughter and assessed his punishment at 15 years in the state penitentiary. There being a direct conflict in the evidence, and the jury having found the issues in favor of the state and against the defendant, and there being competent evidence in the record supporting the verdict of the jury, the case comes to this court with the issues of fact all settled. Summers v. State, 7 Okla. Cr. 10, 120 Pac. 1031; Nowlin v. State, 7 Okla. Cr. 27, 115 Pac. 625, 121 Pac. 791; Calvert v. State, 10 Okla. Cr. 185, 135 Pac. 737; Loudermilk v. State, 33 Okla. Cr. 146, 242 Pac. 1060; Burrows v. State, 43 Okla. Cr. 256, 277 Pac. 685.

The defendant complains of improper cross-examination of the defendant by the county attorney. The evidence discloses that there had been some trouble between the defendant and deceased and at least by inference that this trouble arose over whisky matters. The evidence tends to show that the place of business of the defendant had been searched for liquor and that defendant had been charged in court with a violation of the liquor laws. It would be ridiculous to say that a man's acts which were in any way connected with the commission of the crime could not be inquired into and that he could wrap a mantle of protection around his previous acts and leave the jury to guess at the motive and the interests of the defendant.

In Berry et al. v. State, 44 Okla. Cr. 150, 279 Pac. 982, 983, this court said:

"When the defendant presents himself as a witness, and voluntarily takes the witness stand in his own behalf, he waives all privileges to which he is entitled by remain-

ing silent, and subjects himself to the same rules of cross-examination and impeachment as any other witness."

See Groves v. State, 29 Okla. Cr. 128, 233 Pac. 243; Felice v. State, 18 Okla. Cr. 313, 194 Pac. 251; McClendon v. State, 19 Okla. Cr. 382, 200 Pac. 464; Stephens v. State, 24 Okla. Cr. 351, 217 Pac. 1063.

The defendant having offered himself as a witness and other evidence of the state having developed the fact that the difficulty probably arose over the handling of liquor between the defendant and deceased, it was proper on cross-examination of the defendant to inquire into these matters for the purpose of affecting the credibility of the witness and to show his malice or unfriendly attitude toward the deceased and for the purpose of establishing motive for the commission of the crime.

In the case of Tallon v. State, 22 Okla. Cr. 90, 210 Pac. 309, 311, this court said:

"For the purpose of discrediting a witness, a wide range of cross-examination is permitted as a matter of right in regard to his motives, interest, or animus as connected with the crime or parties thereto. The motives, interest, or animus of a witness are not collateral matters, and these may be shown and considered by the jury in estimating the credibility of a witness, and as to such matters he may be contradicted. * * * The extent to which a cross-examination into the motives, interest, and animus of a witness may go must necessarily be left largely to the discretion of the trial judge."

The defendant next complains of misconduct of the county attorney. It appears at pages 859, 860, of the case-made that the following proceedings were had:

"Counsel for Defendant (Mr. Williams): Counsel for the state has just stated in his argument to the jury, that the defendant was languishing in jail and had been

denied bond, to which statement counsel for the defendant objects as an improper argument and prejudicial to the rights of the defendant.

"And, we move the court to instruct the jury not to consider that part of the counsel's argument and the part of the counsel's argument where he argues to the jury that the defendant was denied bail by the Criminal Court of Appeals, as improper.

"By the Court: Counsel did not say that,—any statement of the attorney that he was denied bail by the court would not be proper."

In the case of Moody v. State, 13 Okla. Cr. 327, 164 Pac. 676, paragraph 6 of the syllabus, this court said:

"Where the argument of the county attorney is not taken down in shorthand and embodied in the record in full and a dispute arises as to what was said in argument, this court is bound by the finding of the trial court recited in the record as to what occurred."

The rule above stated has been followed by this court in numerous cases. The argument of the county attorney not having been taken down and there being a dispute as to what was said in the argument, this court is bound by the finding of the trial court.

Defendant next complains of the giving of certain instructions by the trial court. Taken altogether, the instructions fairly state the law as applicable to the evidence in the case, and are as favorable to the defendant as the facts in the case warrant. The defendant also complains of instructions requested by him and refused by the court. The charge given by the court being sufficient, it was not error for the court to refuse to give the requested instructions. Fisher v. State, 18 Okla. Cr., 541, 196 Pac. 724; Hawkins v. State, 24 Okla. Cr. 82, 216 Pac. 166; Wheat

v. State, 38 Okla. Cr. 119, 259 Pac. 279; Richerson v. State, 43 Okla. Cr. 293, 278 Pac. 356.

Defendant complains of other errors but they are not of sufficient merit to require a reversal of the case. The evidence in the case was sufficient to warrant the jury in finding the defendant guilty of murder. If there was error or prejudice in the case, it must have redounded to the benefit of defendant. The jury only found him guilty of manslaughter and fixed his punishment at fifteen years in the penitentiary when under all the evidence in the case a verdict of murder could have been sustained by this court.

For the reasons stated, the cause is affirmed.

### On Petition for Rehearing.

Since the filing of the opinion affirming this case, defendant has filed a petition for rehearing in which it is earnestly contended that the cross-examination of defendant as to his connection with the liquor business is prejudicial error. The state in the first instance had sought to show as a motive for the homicide that a state of ill will existed between defendant and deceased because of transactions between them connected with the handling of intoxicating liquor and because of a belief by defendant that deceased had stolen from him a large quantity of intoxicating liquor, and there was testimony of two witnesses that a short time prior to the homicide defendant had stated to them on several occasions that deceased or deceased with another person had stolen a large quantity of whisky from him, and that, unless it was returned he would kill deceased.

Defendant on the stand denied any connection with the deceased in regard to the handling of intoxicating

liquor, and denied that any whisky had been stolen from him. The state, for the purpose of showing motive, interest, and animus of defendant, had the right to go into this question on cross-examination of defendant, and evidence on this line was not improper. However, the cross-examination of the state went into matters not properly pertinent to this question and the asking of questions by counsel for the state concerning raids on the place of business of defendant, the purchase by him of large quantities of sugar, and sales of whisky not connected with the above transaction, but claimed to have existed between him and deceased, was improper and the defendant's objection should have been sustained. But, since the evidence in the case shows the defendant to be guilty beyond a reasonable doubt, the asking of such questions was not such an error as will require a reversal of this case.

The petition for rehearing is denied, and the mandate ordered issued.

EDWARDS, P. J., and DAVENPORT, J., concur.