Robert Edward MAXWELL and Lester James Abraham, Plaintiffs in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A-12232.

Criminal Court of Appeals of Oklahoma.

Jan. 4, 1956.

182

Jack E. Gordon, Claremore, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., for defendant in error.

BRETT, Judge.

Plaintiffs in error, Robert Edward Maxwell, age 17, and Lester James Abraham, age 23, defendants below, were charged conjointly by information filed in the District Court of Rogers County, state of Oklahoma, with the crime of robbery with a dangerous weapon in violation of the provisions of 21 O.S.1951 § 801. The offense was allegedly committed on or about the 23rd day of December, 1954. The defendants entered pleas of guilty and court pronounced sentence fixing said Robert Edward Maxwell's punishment at confinement in the state penitentiary for a period of nine years, and said Lester James Abraham's punishment at confinement in the state penitentiary for a period of fifteen years.

Briefly, the facts on which this information is predicated are as follows. It ap-

pears that Franklin D. Moore, the complaining witness, a student at Northwestern University, was on his way home to Brownsfield, Texas, and gave the defendants transportation, as hitchhikers, at East St. Louis, Illinois, in his automobile until they reached a point in Rogers County, Oklahoma. The parties were all riding in the front seat and Lester James Abraham, age 23, who was riding on the outside, pulled a large dirk type knife and demanded that Moore pull over to the side of the road. When he slowed down and pulled over to the shoulder, Robert Edward Maxwell, age 17, reached over and pulled the keys from the ignition. Moore opened the door, jumped out, and started running back toward Vinita. The defendants took control of the car and were later apprehended near Claremore, Oklahoma. It is well to note that the defendants had thoroughly discussed, between themselves, the proposed robbery of Mr. Moore, and both were willing to do whatever was necessary to accomplish the object of their conspiracy. Nevertheless, we must take cognizance of the fact that Abraham is older than Maxwell. The record discloses that Abraham was the leader in this unlawful undertaking. He held the knife and gave the commands in the robbery. Therefore, the court was right in assuming that the Maxwell boy was subject to the influence of Abraham.

■ This appeal involves but one question. The defendants contend that the judgment fixing punishment for Robert Edward Maxwell at nine years confinement and Lester James Abraham at fifteen years confinement is excessive, unreasonable, and unjust. This contention is predicated upon the proposition that on arraignment on the information in the District Court, they entered pleas of not guilty. Being unable to post bail, they were remanded to the custody of the sheriff. It thereafter appears that they were approached by the county attorney and counsel for the defendants relative to withdrawing their pleas of not guilty and changing them to pleas of guilty. The complaining witness, Moore, had gone into the army in Texas and the county attorney explained he desired to avoid the expense incident to bringing him back to testify, and stated he would recommend to the court a sentence of five years in the penitentiary if they would plead guilty. Upon this understanding, and after a telephone conversation with Maxwell's stepfather, the defendants, on January 18, 1955, changed their pleas of not guilty to pleas of guilty. The county attorney made a statement advising the court of the basis for the changed pleas, and recommended sentence for each of the defendants of five years in the penitentiary. Whereupon, the court took the matter under advisement until January 21, 1955. Thereafter, on said last date, Judge Evans refused to follow the recommendation of the county attorney and sentenced Maxwell to a term of nine years in the penitentiary and Abraham to a term of fifteen years in the penitentiary. These penalties, measured by the seriousness of the crime, cannot be said to be excessive. When so measured, even greater penalties might have been imposed without criticism from this court. In fact, Judge Evans deserves to be commended for his attitude in not temporizing with robbery defendants and for his efforts in rigidly enforcing the law in such crimes.

■ In determining the issue herein involved, it is fundamental that the county attorney can make no agreement with an accused for fixing his punishment on a plea of guilty, which would be binding on the trial court, without the trial court's participation and agreement. In re Davenport, 95 Okl.Cr. 140, 241 P.2d 429, Moseley v. State, 46 Okl.Cr. 435, 287 P. 839.

■ In this case, it appears the county attorney took advantage of the defendants, and may have caused them to abandon their right to trial by jury on the misapprehension that the prosecutor's recommendation would be followed by the trial court. This is a possibility, even though at no time in the proceedings did the defendants or their counsel ever request leave of the trial court to withdraw their pleas of guilty, re-enter their pleas of not guilty, and stand trial by jury. It appears that their efforts herein, were devoted exclusively to attempts to beat down the sentence.

The situation confronting this court, in the case at bar, may have been precipitated by the conduct of the county attorney in attempting to secure a plea of guilty. The pronouncement of sentence is a judicial matter and the county attorney cannot control the judgment of the court. However, sometimes he may give his advisory recommendation, as an officer of the court, for the benefit of the court. Sometimes such recommendations, as herein, may prove embarrassing to the trial court in its effort to enforce the law. Such recommendations are usually arrived at in a conference with defendants' counsel, as the result of an extra-judicial pre-trial attended only by the county attorney and counsel for the defendants, and so create situations where the trial judge cannot approach the performance of his duty in a free and untrammelled manner. County attorneys and defense counsel should not be permitted to enter into an agreement tieing the hands of the court in the discharge of his sworn duty. Hence, recommendations for leniency uncalled for by the factual situation, should be frowned upon by the courts.

■ Each case, such as the one at bar, must be determined on its own facts and circumstances. In the situation herewith presented, taking into consideration the fact the defendants had no prior record and looking at the case as a whole, we are of the opinion that the agreement the county attorney made with the accused, leading them to believe he could control the court's judgment, may have caused the defendants to waive constitutional and legal rights which they, otherwise, might have insisted upon. Accordingly, under the authority of 22 O.S.1951 § 1066, we feel impelled to reduce the sentences herein imposed of fifteen years for Abraham and nine years for Maxwell to ten years and seven years in the penitentiary, respectively, and as so modified, the judgment and sentence as to each defendant is affirmed.

JONES, P. J., and POWELL, J., concur.

JONES, Presiding Judge (concurring).

Although concurring in the conclusion reached in the above opinion I feel that some additional clarification of what has been said should be made lest county attorneys and others interested shall misconstrue the opinion.

The statutes of Oklahoma make it the duty of county attorneys to guard the interests of the public and specifically confer authority upon them to determine when to prosecute a criminal action on behalf of the State. Perry v. State, 84 Okl.Cr. 211, 181 P.2d 280. County attorneys likewise have the duty when a plea of guilty is entered to make a statement concerning the facts of the case and if they have a recommendation as to the punishment, it should be given. Of course the trial judge as an impartial arbiter is not bound to accept the recommendation of the county attorney but we can see where in the exercise of judicial wisdom it is generally the best to follow such recommendation. The county attorney as the official representative of the people, vested with the duty of fully investigating the facts of the case, knowing its weakness and its strength, deserves no criticism for making a recommendation or expressing his views about the case.

In the instant case all perhaps will readily agree that the factual situation showed that the defendants deserved more than the minimum punishment. However, even though the county attorney knew from his investigation that the defendants were guilty of committing the crime, yet he would be stymied in his efforts to prosecute if he was unable to secure the attendance of the complaining witness, Moore. It appeared that Moore had enlisted in the Army, was outside of the jurisdiction of the court, in another state and did not wish to return to testify as a witness. I can readily see where the county attorney under such circumstances, knowing in his heart that the accused were guilty and deserved more punishment, still would rather see the defendants serve the minimum punishment of five years imprisonment in the penitentiary than be forced to abandon the prosecution because of the absence of the only witness who could give the details of the alleged robbery. The crime could not be established except by the testimony of Moore. Probably counsel for the accused had

learned of the difficulty confronting the county attorney in procuring the attendance of the complaining witness and rather than see his clients forced to remain in jail until another term of court was held, worked out the agreement with the county attorney as set forth in the opinion. There was nothing wrong in the way any of the parties proceeded and none of them is deserving of criticism.

POWELL, Judge.

I fully concur in what Judge JONES states.